The next case for argument is 16-1671 Ericsson v. Intellectual Ventures. Why don't we give everybody a chance to clean up here. The 408 patent claims here relate to any method of frequency hopping on a broadband base station. The prior art here included the 480 patent from the same inventor group with a remarkably similar base station, the only difference not being the claims, explicitly referencing the GSM frequency hopping standard and the GSM frequency hopping standard expressly telling you how to frequency hop. The board's conclusions on both anticipation and obviousness were each based on issues never raised by the appellee and for which all of the record evidence from both sides was to the contrary. Can I, I've got a problem with your case and so I want to give it to you so you can address it. It seems to me that none of your arguments go beyond how we should interpret the record. And given the deferential standard of review, I have a hard time seeing how you're leading us to a path that would get around that. And the sub part of that is there are also credibility determinations implicated like Dr. Stark, I guess, his testimony and evaluation of his testimony, whether it was testimony on the other side. That too is an area where we have to show extreme deference to the board in terms of its conclusions. So how, given all of that, tell me where there's room here for reversal. Absolutely, and the room for reversal here is the issues that the board found. The Froydo patent base station only does modulation. It can't map data to DSPs. Do you agree that there's a difference between frequency hopping on a base station and allowing frequency hopping by phones that use a base station? I think to allow frequency hopping on phones that use a base station, you need a frequency hopping base station. So there's no difference between them? I don't think there's a difference. So to return to Judge Coyle's question, what you're talking about is two issues, only modulation. You can't make that map data to DSPs. That's what underlays the finding. And both sides' experts testified directly to the contrary. So this isn't a situation where you have battle of the experts. This is an expert in a situation where both sides' experts were directly opposed. Wait, are we talking about the 480 reference? Yes. Well, no. That's not the way I read it, so tell me if I'm wrong. I mean, the board drew its conclusions by reading the references, by evaluating the testimony of experts, by construing what I think it fairly construed was an omission by your counsel as to what the reference says. And putting all of that together, it strikes me that that's clearly a substantial evidence review. Is it not? It is. Well, it's a substantial evidence review, obviously, but there's no substantial evidence in the record. If you look at what the board found at A17, the reason it says that there's no anticipation is because it says that column 5, line 4 to 17, would be understood only as referencing modulation. Both sides' experts testified that's not the case. With respect to Dr. Wells, at least... What they said was, we find, I'm looking at A17, we find that this passage states at most, so I think you know what passage we're talking about, at most, that the system described in the 480 patent supports the modulation specified by the GSM standard. But the evidence from the other side's expert even agreed that this part of the specification is indicating support for the standards themselves, not just modulation. You can't have a phone, a base station, that just does modulation. If I could direct your honors to the testimony, at A2558, we asked Dr. Wells, specifically with respect to this section, okay, so let's go to line 9, column 5, line 9, the particular modulation in use may be any one of a number of wireless standards, correct? Answered. That's what it says, yes. Question. So the language in the 480 patent says it can perform a variety of wireless standards, right? Answered. Yes, it does. And he goes on to explain that the standards include everything listed in that section, GSM, IS-54B, IS-95, AMPS, PCN, and that's at appendix 2559, 2568-69, and 2710. And the Appleese brief itself also conceded, specifically, CARNI 8-4, and this is at appendix 384, specifically CARNI 480 only states that it could be used to support a number of wireless standards such as AMPS, IS-95, IS-54B, GSM, and PCN. Hence, the question was never could it support standards, or the question was never is it just supporting modulation out of standards. Everyone agreed it supported the standards, and this was the basis for the board's holding, and that's why there's no substantial evidence on anticipation. For obviousness, we start that there's legal errors to get through before you get to the board's actual finding, and the first one being the failure to do any analysis of the grand factors. Here, the only element that the board found lacking for anticipation was this changing frequency element, but that's just basic frequency hopping. In fact, if you look at the red brief, page 3, they point to the GSM standard as showing how this element is met, and so there's no differences between the priority and the claims. The only difference alleged with respect to the base station itself and the 480 patent was that the 408 patent added this extra memory element. That's not in claim 1, so there's no difference between the claims and what's in the prior art. The appellee does not dispute the motivation to combine here. There's no secondary consideration, so there's an unrebutted prima facie case that bottoms this, which the board never reached, never addressed in its holding, so this is important for numerous reasons. First, this court's authority requires a grand factor analysis as part of any obviousness inquiry. Second, you can't do an expectation of success analysis, which is all the board did, just completely unmoored from an understanding that everything's in the prior art. There's an express motivation to combine and express teachings for how the frequency hops. Where's the express motivation to combine? I'm sorry. It's in two aspects. First of all, if you look at red brief 37 and 38. Did the board find there was a motivation to combine? The board didn't address the subject. If you look at A37, I'm sorry, the red brief 37 and 38, we point out in our briefing you have the statement that this does frequency hopping in the patent and then a frequency hopping standard that you want to implement on a base station. Red brief 37 and 38 don't dispute that there's a motivation to combine here. Red brief argues that the PTAB factually found that the disclosure of the GSM standard in the 480's base station performed frequency hopping. Do you agree that's a factual finding? Where the red brief argued that the 480 patent doesn't teach that it does frequency hopping? They argued that it was a factual finding. That's my interest. Well, the factual finding that the board, the only factual finding the board made on this was at A17 where it just said it does modulation. No one ever said that. Everyone was saying it supported the standards. But when we get to obviousness, there's no dispute that frequency hopping is in the GSM standard itself. Now, this court, KSR, recognizes that obviousness can be decided as a matter of law where the grand factor is not a material dispute and the obvious of the claim is apparent in light of these factors. And that's precisely the case here. Everything's in the prior art, motivation to combine, no secondary considerations. Now, the expectation of success analysis the board actually did was itself flawed because it only looked at can you combine, can you GSM frequency hop on the 480 patent base station. That was the analysis. That's not the right standard. It's not can the prior art references be physically combined. It's do they render the claim as a whole obvious. And that's the Allied Erecting case. Here, GSM had explicit instructions for how to frequency hop. It was a standard. It was designed to be implemented on base stations so people knew how to make base stations to follow it. The record was clear that frequency hopping base stations were already known in the prior art, just narrow band ones, not broad band ones. Now, the appellee never argued or submitted any evidence that there was anything different about frequency hopping on a broad band base station as opposed to a narrow one. This by itself provides a reasonable expectation of success. Furthermore, as this court recognizes, the expectation of success need only be reasonable, not a guarantee. Here, again, the only difference was the Airnet and vendors added a piece of memory. Now, to the extent you needed that piece of memory to frequency hop, the record testimony was undisputed that it would be obvious to add a person of skill in the art would know if they're working on a base station to add a piece of memory. There's nothing unexpected, nothing unpredictable about simply adding a piece of memory. But the analysis of the board actually did do for why the prior art allegedly couldn't frequency hop. It's itself based on issues which were never argued by intellectual ventures and for which no substantial evidence exists in the record. Can you point us to what – you've said that twice now, that they didn't rely on stuff that wasn't argued by the appellate. Yeah, so what the board actually found finally in the Reed hearing decision, which was underlying the ultimate conclusion, is at A41, the EPRM-enabled 202 of Figure 6 does not determine which slot is associated with which DSP. That's the underlying finding which supports the board's ultimate conclusion that you can't map data to DSPs. I'm sorry. I'm still – I just found A41. So what are you talking about in A41? The EPRM-enabled 202 of Figure 6 does not determine which slot is associated with which DSP. That was ultimately why the board found the 480 patent base station couldn't frequency hop. But that was never disputed. It was never disputed that the base station could map data to DSPs. You have to do that to support phone calls in general. Forget about frequency hopping. You can't map data to DSPs without – you can't have a phone call without that. And the patent owner himself and their expert throughout the briefing conceded that the 480 patent could do exactly that. If you look at the expert report of Dr. Wells at 3337-38, he says, quote, the architecture of the 480 patent then uses internally synchronized switchboard to forward the relevant sample frequency components to a specific DSP. And then at 3351, this flexible configuration is possible because disposing the TDM bus between the channelizer and the demodulator DSPs allow DSPs to be allocated as needed. There was never any dispute that the base station could do this. In fact, Dr. Wells at A26 – appendix 2637-38, 2655-59, agreed that the 480 patent base station could update the mapping periodically over time as calls are added, dropped, or changed zones. All you need to do for – that's all you need to do for frequency hopping is update the mapping. What the patent owner's real position below was was that it couldn't do this fast enough every 4.3 milliseconds to support GSM frequency hopping. Their expert had no scientific analysis. Ours did, proving it was 5,000 times fast enough. But the claims don't even require frequency hopping under GSM every 4.3 milliseconds. You can frequency hop every minute, every hour, every day, and still satisfy these claims. And with Dr. Wells' concession that it could update the mapping, that's an admission that you could update it on a period sufficient to support frequency hopping. But more fundamentally, we have a prior base station that's remarkably identical. The only difference isn't in the claims. You have GSM's express instructions for how to frequency hop. The primer-facer case of obviousness was unrebutted, and the obviousness of these claims is readily apparent in light of this. And so the board's decision should be reversed. Thank you. Good morning, and may it please the Court. Byron Picard on behalf of Intellectual Ventures. I don't believe there are any- I want you to address the question I asked your opposing counsel about the actual finding of frequency hopping. And you said it in your red brief, and I underline language at A18 at the bottom and 19 at the top. It sure seems to support your statement, and I want you to address that. Yes. I don't recall the exact question you asked, Mr. Spear. Well, I was referencing-I'm sorry. I was referencing your brief at 21 where you said, quote, the PTAP factually found that the disclosure of the GSM standard in the 4AO patent did not teach that the 4AO patents at the base station performed frequency hopping. And I went-when somebody says that, I went, look, it sure seems to support it. And he just blew it off. Yeah, I think Your Honor's right. I read the final written decision as making that factual finding, and the board reiterated- They discussed the GSM standard, and then they make the next- Yes, and they discussed the 4AO patent itself. And just to- Is that what this comes down to? I mean, this is very difficult technology, at least for me. It is. And so it seems like what it comes down to is whether or not the 480E includes, implements, describes a system that implements frequency hopping. Is that what the underlying issue is with respect to all these arguments? For anticipation, it is, Your Honor. I did want to just draw the court's attention to one thing on the question whether the finding that the 4AO patent doesn't describe a base station that performs frequency hopping. I think the board clarified things in its rehearing decision, and this would be at A39. And they pointed in this instance directly to Dr. Wells' testimony. We find that Dr. Wells has testified consistently that the portion of the 4AO patent quoted above actually means that it can support GSM, and that it characterizes GSM as a frequency hopping standard. It doesn't say that it supports frequency hopping. So the board not only had the 4AO patent, which is substantial evidence, but it had expert testimony when it made that decision. I had a lot of it, too. I agree. I would like to turn to the obviousness issues. I think if there is a difficult issue in this case, it would be those. And there's been a change in emphasis, I think, in the briefing here, between the blue brief and gray brief. And now there's a theme in the reply brief that somehow the board didn't do the proper gram analysis, and I don't think that's a fair criticism of the board here. The board's thorough consideration of the scope and content of the prior art, if you look at the final written decision, they spend pages on what's disclosed in the 4AO patent, what's disclosed in the GSM standard. They consider the patent itself. They construed the claims. They looked at the specification. And then, of course, in the anticipation analysis, they're necessarily considering the differences between the prior art and the claims. And then on the motivation to combine issue, I don't think it's fair to say that there wasn't a rebuttal there. The inoperability issue is below. That's a direct rebuttal to the motivation to combine. And I'll just add one thing. There was an explicit finding about the level of skill in the art. So I don't think it's fair to say that the court didn't step through the gram analyses. It certainly quoted the case. It was cognizant of that requirement. And then when it comes to the final written decision, the issues on obviousness had really boiled down to two questions, and that was did the skilled artisan, would that skilled artisan have had a reasonable expectation of succeeding in combining the teachings of GSM and the 4AO patents? And it's an inoperability issue. I think it's not fair to criticize the board for focusing its final written decision on the two things that were really in dispute there. And on those issues, the board was supported by ample substantial evidence on both questions. We have a classic battle of the experts here. Petitioner's expert, Dr. Stark, had a theory. Dr. Wells went through in great detail to show why that theory simply couldn't work. And the board credited that testimony of Dr. Stark. And it cannot be a basis for error to say that there was weight on the other side of the scale in opposition to what the board found. The question is, is there substantial evidence, and that exists here. If the court has any questions, I'd be happy to address them or yield the remainder of my time. So thank you. May it please the court. While intellectual ventures does indicate there's substantial evidence in the record, on the obvious issue, the problem is that that substantial evidence does not back up what the board actually found. If we could go through the history here, we established in our petition that what we had was a TDM bus that flexibly mapped data on and off to the DSP. Why the arguments for why this could not work to do frequency hopping changed over time. The appellee's position below the substantial evidence that they put in was that it couldn't update this mapping fast enough to support frequency hopping every 4.3 milliseconds. That was their argument. The board did not credit that argument. It did not credit the substantial evidence that they presented. The board instead, in its final decision, came up with a new theory that they weren't arguing. It said what the board found was that the figure three by itself doesn't map data to DSPs. That was never our position. When we showed on rehearing that everyone agreed that it was mapped on the TDM bus by figure three and off the TDM bus by figure six, the board agreed, yes, you're right, we didn't talk about figure six, and they came up with yet a new theory for why it allegedly couldn't support frequency hopping. And this was the board's finding. This was the one that substantial evidence needs to support, and that's at appendix 41. This is the only reason that they gave for why this somehow can't support frequency hopping. DPRAM enabled 202 of figure six does not determine which slot is associated with which DSP. We pointed to this in our blue brief and said this is the fundamental finding. The red brief didn't even mention it, and if we look throughout, Appleese concede that this TDM bus mapping is provided in the sites that I gave you. Their only position was that it couldn't update it fast enough. That was all they were arguing below. The board never credited that conclusion because all of the scientific evidence was the contrary. And plus, the claims don't cover every 4.3 milliseconds. They cover any frequency hopping, so you don't even have to map it that fast. But I think the more fundamental issue, if you step back, that's not the right reasonable expectation of success analysis. My friend was wrong in saying the expectation of success analysis is can you combine – is it an expectation of success in combining the references? That's not the analysis. As this court said in Allied Directing, it's a reasonable expectation of success in arriving at the claimed invention. Here we had explicit instructions in GSM for how to frequency hop. They told you how to do it. They were intended to be followed by persons with skill in the art to make base stations to frequency hop. Frequency hopping base stations were known in the prior art, and there's never any explanation from how frequency hopping on a broadband base station would be any different. Sure, we proved that you could do it on the one in the 480 patent. There was – the arguments for why you couldn't weren't correct, but that's not what you need to prove. Here the expectation of success was shown. The only thing the Airnet inventors did was add this piece of memory, and the undisputed evidence was that doing so was something readily apparent and readily available to a person with skill in the art. How is there not an expectation of success? Thank you. We thank both sides.